PER CURIAM.
This case involves a request by Marshall Durbin & Company (Durbin) that the Environmental Management Commission (Commission) change an administrative rule, regulation, or standard. Previously, an appeal was taken to this court in this case which resulted in the matter being remanded to the trial court to consider Durbin’s request for certiorari. Marshall Durbin & Co. v. Environmental Management Commission, 495 So.2d 79 (Ala.Civ.App.1986). Other issues which are related to, but not determinative of, the problems in this case have been decided by other appellate courts. Marshall Durbin Co. v. United States Environmental Protection Agency, 788 F.2d 1490 (11th Cir.1986); Marshall Durbin & Co. v. Jasper Utilities Board, 483 So.2d 399 (Ala.1986).
After remand, this matter was submitted to the trial court upon the stipulated administrative record. The action of the Commission was affirmed by the trial court on June 10, 1987, and the relief sought by Durbin was denied. A timely appeal was *963 perfected by Durbin. We are indebted to able counsel of both sides for most helpful briefs.
Durbin’s poultry processing plant in Jasper uses the sewer service which is provided by the Jasper Utilities Board (Jasper), and Durbin pays a user rate to Jasper therefor. Jasper’s treated sewage is discharged into Town and Cane Creeks, and Jasper is required to obtain and have a National Pollutant Discharge Elimination System (NPDES) permit.
Jasper’s NPDES permit expired in 1984. The Alabama Department of Environmental Management (Department) issued a draft permit in May 1985 and a final NPDES permit in December 1985 to Jasper. Those permits used the required 7Q10 standard, which is the “minimum 7-day low flow that occurs once in 10 years.”
The Commission of the Department has seven members, consisting of a physician, a professional engineer, an attorney, a chemist or veterinarian, a person certified by the national water well association certification program, a biologist or ecologist, and one Alabama citizen who is not required to have any specialized expertise. Each member, except for the last mentioned one, must have familiarity with, or training in, environmental affairs. Ala. Code (1975), § 22-22A-6(b). The Commission is responsible for developing the environmental policy of this state and for establishing, adopting, modifying, repealing, or suspending Alabama’s environmental rules, regulations, and standards. Ala. Code (1975), § 22-22A-6(a).
In April 1985 Durbin petitioned the Commission to amend that section of the Alabama Water Quality Criteria and Use Classification which requires the use of the 7Q10 standard for design flow criteria. Durbin contended that the more appropriate standard for design flow criteria would be 30Q5, which is “the minimum 30-day low flow that occurs once in 5 years.” In the alternative, Durbin requested a variance for Town and Cane Creeks so as to allow the use of the 30Q5 standard. Two affidavits were included in Durbin’s petition. One affidavit largely relied upon a draft of a report for a branch of the United States Environmental Protection Agency. The other affidavit (and its accompanying data) apparently was not signed by the proposed affiant or by a notary public.
Evidently, Jasper’s present sewage treatment plant must be replaced by a new plant in order to meet the 7Q10 standard, but the present plant would comply with the 30Q5 standard. User fees of Jasper have materially increased in order to provide some of the funds needed for the construction of the new plant.
Durbin also sought to downgrade Town and Cane Creeks from 3.0 to 2.0 parts per million of dissolved oxygen. However, at a Commission meeting one of Durbin’s representatives admitted that Durbin did not have a problem with the present dissolved oxygen level standard (3.0) for the two creeks. Accordingly, we consider only the requested standard change from 7Q10 to 30Q5.
The procedure to be followed by the Commission in adopting, amending, or repealing rules, regulations, or standards is set out in Ala. Code (1975), § 22-22A-8. When the Commission held its May 1985 meeting, it was determined that there were no existing procedural regulations to guide it in deciding whether to engage in the rule-making process when called upon to do so through a petition filed by an interested party. The Commission appointed a subcommittee to develop the criteria to utilize and apply in such instances. The following threshold criteria were adopted by the Commission on July 10, 1985, after being developed and proposed by the subcommittee.
“1. Whether the proposed rule is unconstitutional or beyond the statutory authority of the agency to adopt;
“2. Whether the proposed rule would promote the legislative intent and purposes of the statute which the Alabama Department of Environmental Management and the Environmental Management Commission are charged to implement;
“3. Whether the petition is supported by such substantive, credible and rele *964 vant information which would reasonably support the proposed rule in the absence of contradictory evidence or other relevant factors which the Commission might legitimately consider;
“4. Whether the petition is redundant because petitioner has had a prior opportunity to present relevant evidence on the subject matter of the petition and the petitioner unjustifiably failed to present any such evidence;
“5. Whether alternative avenues for the same or similar relief sought are presently available to the petitioner or have in the recent past been made available to the petitioner;
“In addition, on all petitions for rule-making changes the Commission should take into consideration the manner in which the new rule would impact the overall regulatory scheme of the [Department] and whether such new rule, if implemented, would promote the basic underlying public policy of the statutes, rules, and regulations for which [the Department] is charged with implementing.”
The subcommittee further recommended that Durbin’s petition be dismissed as failing to meet all of the above-referenced criteria, and the Commission complied with that recommendation. Durbin then filed its complaint in the circuit court, and Dur-bin timely appealed from the trial court’s final judgment on July 10, 1987, which upheld the action of the Commission and denied Durbin’s relief.
In reviewing the action of an administrative agency, a court is normally limited to a review of the administrative record, Ex parte Smith, 435 So.2d 108 (Ala.Civ.App. 1983), and the standard of review in certio-rari matters is usually confined to a consideration of the proper application of the law involved and whether the ruling was supported by any legal evidence. Marshall Durbin & Co., 495 So.2d at 81. A court in reviewing the action of an administrative agency through certiorari proceedings “does not pass upon the wisdom of the decision of the agency nor is it within the purview of courts to pass upon the merits of a particular action of an administrative agency when the agency exercised its discretion in choosing the method of achieving legislative objectives.” Alabama Board of Nursing v. Herrick, 454 So.2d 1041, 1043 (Ala.Civ.App.1984) (citations omitted). A court must give great weight to the reasoning and decision of the administrative agency. City of Birmingham v. Jefferson County Personnel Board, 468 So.2d 181 (Ala.Civ.App.1985).
One of the duties of the Commission is to adopt and promulgate ecological rules, regulations, and standards, and, in doing so, the Commission may rely upon its expert knowledge of factors commonly known to it which are relevant to the issue before it. Illinois Central Railroad Co. v. Thomas Alabama Kaolin Co., 275 Ala. 236, 153 So.2d 794 (1963). In that case the following language from 42 Am.Jur. Public Administrative Law § 130 (1942) was quoted and determined to be there apposite:
“ ‘The process by which proof is simplified in a judicial proceeding by the court’s taking judicial notice of matters of common knowledge permits an administrative tribunal to take official notice of the same facts of which a court takes notice. However, administrative agencies necessarily acquire special knowledge in the fields of their activities, and the acquisition of this knowledge is the purpose of their existence in many instances. Accordingly, the field in which official notice may relieve from the necessity of proof is broadened to permit administrative officers to use such knowledge; ....’”
Illinois Central Railroad Co., 275 Ala. at 239, 153 So.2d at 796. That rule was highly appropriate for the Commission to use in deciding the threshold question of whether there was such merit in Durbin’s petition as to justify a full-blown evidentiary hearing.
The legislature expressly stated that the public policy of this state and the purpose of the Alabama Water Pollution Control Act is “to conserve the waters of the state and to protect, maintain and improve the *965 quality thereof_” Ala.Code (1975), § 22-22-2.
From the very nature of the two standards, it is obvious that the minimum flow which occurs during a period of seven days once in ten years will be a lower flow than the minimum flow which occurs for a period of thirty days once in five years. If the less stringent 30Q5 standard is utilized in determining discharge limitations for Jasper’s NPDES permit, a greater amount of pollution could be allowed in the two creeks than would be permitted if the 7Q10 standard is used. Since a change in the standards from 7Q10 to 30Q5 could result in allowing more pollution to be discharged by Jasper into Town and Cane Creeks, that change could be considered to be contrary to the public policy of this state and the purpose of the Alabama Water Pollution Control Act in that the proposed change would not protect, maintain, or improve the quality of those two streams.
One of the commissioners noted that Durbin’s requested changes would result in a massive relaxation of the water quality regulations. According to that commissioner, Tennessee is the only state which uses a design flow criteria other than 7Q10, Tennessee’s standard being 3Q20, which is even more stringent than 7Q10.
We have previously indicated that one of Durbin’s affidavits as it appears in the appeal record was not signed by the affiant or by a notary public and that one of the documents attached to the other affidavit was only a preliminary draft. The Commission could have considered that Dur-bin’s evidence did not adequately support its petition.
A decision of an administrative agency is not arbitrary or capricious where there is a reasonable justification for the decision or where it is founded upon adequate principles or fixed standards. Sexton v. Tuscaloosa County Civil Service Board, 426 So.2d 432 (Ala.Civ.App.1983).
The Commission adopted criteria on July 10, 1985, which any petition to it to change, adopt, or repeal a rule, regulation, or standard must meet in order to survive a summary dismissal. The Commission determined that Durbin’s petition did not satisfy those criteria, and the petition was dismissed. The practical effect of Durbin’s petition would be to permit more pollution to be discharged into the two streams, which result would not promote the purpose of the Alabama Water Pollution Control Act. In applying its expertise to Dur-bin’s petition, the Commission was also justified in finding that the petition was not sufficiently supported by proper evidence. The Commission was further warranted in finding that the rule change from 7Q10 to 30Q5 would be detrimental to the Department’s overall regulatory scheme. The Commission exercised its discretion in choosing the method of achieving legislative objectives, Alabama Board of Nursing, 454 So.2d 1041, and we must give great weight to its decision. City of Birmingham, 468 So.2d 181. The decision of the Commission to dismiss Durbin's petition was not arbitrary, unreasonable, or capricious.
We affirm.
AFFIRMED.
All the Judges concur.